| | |
|---|---|
| STEVEN GERHARDSON, RON HANEK, MIKE JOHNSON, and JIM COSTELLO,<br><br>                   Plaintiffs,<br><br>v.<br><br>GOPHER NEWS COMPANY; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and LOCAL NO. 638 OF THE MISCELLANEOUS DRIVERS, HELPER & WAREHOUSEMEN'S UNION (INTERNATIONAL BROTHERHOOD OF TEAMSTERS),<br><br>                   Defendants. | Civil No. 08-537 (JRT/JJK)<br><br><br><br>**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Jordan M. Lewis and Wood R. Foster, Jr., **SIEGEL BRILL GREUPNER DUFFY & FOSTER, PA**, 1300 Washington Square, 100 Washington Avenue South, Minneapolis, MN 55401, for plaintiffs.

Anthony E. Napoli and Albert M. Madden, **CENTRAL STATES SE & SW AREAS PENSION AND HEALTH AND WELFARE FUNDS**, 9377 West Higgins Road, Suite 1000, Rosemont, IL 60018-4938, for defendant Central States.

Michael Iwan, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for defendant Gopher News Co.

Roger A. Jensen, **MILLER O'BRIEN CUMMINS, PLLP**, 120 South Sixth Street, Suite 2400, Minneapolis, MN 55402, for defendant Local No. 638.

Steven Gerhardson, Ron Hanek, Mike Johnson, and Jim Costello (collectively, "plaintiffs") are delivery drivers for Gopher News Company ("Gopher News") and

members of Local No. 638. In early 2007, Central States, Southeast and Southwest Areas Pension Fund ("Central States," or the "Fund"), Gopher News' multiemployer pension plan, expelled Gopher News from the plan for violating the plan's "adverse selection" rule. As a result, plaintiffs were unable to fully vest their retirement benefits. Plaintiffs filed suit against Gopher News, Local No. 638, and Central States, alleging four causes of action. Count I, the only count alleged against Central States, alleges breach of fiduciary duty. The case is before the Court on plaintiffs' motion for summary judgment against Central States. (Docket No. 88.) For the reasons stated below, the Court denies the motion.

## BACKGROUND[1]

Gopher News distributes magazines and other periodicals to outlets throughout the Upper Midwest. (Am. Compl. ¶ 12, Docket No. 54.) Plaintiffs are long-standing members of Local No. 638, and Gopher News has employed plaintiffs for many years "to deliver via truck certain periodicals and magazines distributed by Gopher News." (*Id.* ¶¶ 2, 6-9.) Local No. 638 represents certain Gopher News employees, including plaintiffs, for the purpose of collective bargaining. (*Id.* ¶ 13.) The collective bargaining agreements ("CBAs") between Gopher News and Local No. 638 "established the terms and conditions under which plaintiffs . . . worked." (*Id.* ¶ 14.)

---

[1] The Court views the facts and evidence in the record in the light most favorable to Central States, the non-moving party. *Riley v. Lance*, 518 F.3d 996, 999 (8th Cir. 2008).

Central States is a multi-employer pension fund that "is primarily funded by contributions remitted by multiple participating employers through negotiated collective bargaining agreements with local unions," such as Local No. 638, "that are affiliated with the International Brotherhood of Teamsters." (*Id.* ¶ 11.) "Gopher News entered into a participation agreement with . . . Central States," and in accordance with that agreement, Central States administered the pension plan in which plaintiffs participated. (*Id.* ¶¶ 2, 15.) The pension plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Act of 1980. 29 U.S.C. §§ 1301 *et seq.*

The pension plan has an "adverse selection" rule, which prohibits an employer from entering into a collective bargaining agreement in which only some employees with a particular job classification participate in the Fund. *See Gerhardson v. Gopher News Co.*, No. 08-537, 2009 WL 294291, at *1 (D. Minn. Feb. 5, 2009). The adverse selection rule eliminates the possibility that the Fund will receive contributions only on behalf of older employees who are nearing retirement, without additional contributions on behalf of younger employees whose benefits are not fully vested. (*See* Central States' Mem. in Supp. of Mot. for Summ. J. at 5, Docket No. 25.) Allowing an employer to select only older employees to participate in the Fund would be "actuarially unsound." (*Id.* at 4 (internal quotation marks omitted).) If no new employees participate in the Fund, then after the older employees retire and begin drawing on their retirement benefits, the Fund's assets will quickly be depleted. (*Id.* at 5.)

Gopher News employs "inside workers," including warehouse workers, as well as truck drivers such as plaintiffs. The truck drivers and the inside workers have separate CBAs. (Mem. in Supp. at 12, Docket No. 90.) The inside workers do not participate in the Central States pension plan. (Mem. in Supp. at 12, Docket No. 90.) Beginning in the mid-1990s, the demand for Gopher News' delivery services decreased dramatically, when most of its accounts changed from delivery twice a week to delivery once a week. (Weber Dep. at 70, Watson Aff. Ex. F, Docket No. 92.) As a result, Gopher News created "combination jobs" that included some driving work and some "inside" work. (*Id.* at 70-71.) Warehouse workers filled these combination jobs. (*Id.* at 71.)

The 1998 and 2001 CBAs for Gopher News' truck drivers disclosed the following information about the new "combination jobs":

> The parties agree that the changing nature of the business may require that driving positions may be combined with work outside the present drivers' bargaining unit in order that a 40 hour week is maintained. In respect to this provision, combination jobs, including driving work, may be filled by employees from the warehouse bargaining unit subject to their own wages, benefits and working conditions.

(Watson Aff. Exs. R, S, Docket No. 94.)

On January 3, 2006, Local No. 638 sent Central States a copy of its 2005-2011 CBA, which contained the same notice of "combination jobs" that appeared in the 1998 and 2001 CBAs. (Watson Aff. Ex. V, Docket No. 94.) Soon thereafter, Central States audited Gopher News. (*See* Watson Aff. Ex. W, Docket No. 94.)

In November 2006, after completing the audit, "Central States concluded that Gopher News had violated" the plan's "'long standing policy' prohibiting 'adverse

selection.'" (Am. Compl. ¶ 16, Docket No. 54.) Central States reached this conclusion after learning that Gopher News had hired several people as "warehouse drivers," "who worked alongside plaintiffs" but did not participate in the Fund. (*See id.*) Instead, the warehouse drivers, along with other inside workers, participated "in an employer-sponsored 401k retirement plan." (*Id.*)

Because Central States concluded that Gopher News had violated the adverse selection rule, Central States terminated its relationship with Gopher News, effective January 31, 2007. (*Id.* ¶ 19.) Thereafter, Gopher News stopped making contributions to the Fund on behalf of plaintiffs. (*Id.*) After the termination date, "plaintiffs could no longer accrue any additional pension benefits with Central States," unless they found employment with another employer participating in the Fund. (*Id.*; Ans. to Am. Compl. ¶ 19, Docket No. 64.) The termination had significant financial repercussions for plaintiffs, who were nearing retirement. The plan "increases benefit levels in 10-year employment intervals." (Am. Compl. ¶ 20, Docket No. 64.) "[B]ecause none of the plaintiffs [had] attained 30 years of employment as of" January 31, 2007, "their pension payments were frozen at their 20 year level." (*Id.*) Plaintiffs claim, *inter alia*, that Central States should have permitted plaintiffs to make "self contributions" to the Fund after Central States terminated Gopher News, so that they could reach the thirty-year threshold and be eligible for the highest level of retirement benefits. (*Id.* ¶ 29.)

On February 26, 2008, plaintiffs filed a complaint against Gopher News, Central States, and Local No. 638. (Compl., Docket No. 1.) On February 5, 2009, the Court denied Central States' first motion for summary judgment without prejudice.

*Gerhardson*, 2009 WL 294291, at *1. The Court rejected Central States' argument that plaintiffs were merely repackaging an ERISA benefit denial claim as a breach of fiduciary duty claim. *Id.* at *3. The Court then reviewed plaintiffs' allegations and concluded that plaintiffs had not clearly identified the Fund's breaching act. *Id.* at *4. The Court concluded that it was unable to determine the appropriate standard of review for Count I, "because a different standard of review may apply depending on how the breaching act is defined." *Id.* The Court found that plaintiffs were entitled to conduct additional discovery in order to define the relevant breaching act for Count I. *See id.* at *5.

Plaintiffs have now identified three breaching acts and four alternative theories of liability for Count I, as discussed in greater detail in Part II.B below. (Mem. in Supp. at 18, Docket No. 90.) Because the parties dispute whether some of those theories of liability are within the scope of the allegations in Count I of the amended complaint, the Court sets forth Count I in full:

> **Count 1 – ERISA Breach of Fiduciary Duty By Central States**
> 25. Plaintiffs restate the above allegations as if fully set forth.
> 26. Plaintiffs' first cause of action is for breach of fiduciary duty, brought against Central States, Southeast and Southwest Areas Pension Fund. The claim arises under 29 U.S.C. § 1132(a)(3).
> 27. Central States, Southeast and Southwest Areas Pension Fund is, within the meaning of those terms in ERISA, a fiduciary to plan participants, which includes plaintiffs. It is a fiduciary because it (1) exercises discretionary authority over the management of the plan and (2) exercises any authority over the disposition of plan assets.
> 28. As a plan fiduciary, Central States owes to plaintiffs the punctilio of an honor the most sensitive. Among the obligations such a duty

> entails, Central States must make decisions that are in the best interests of the plan participants, and may never put its own interests ahead of the interests of plan participants.
>
> 29. Central States had other options available to it upon discovery of Gopher News's violation of the adverse selection policy. These options included permitting plaintiffs to continue with the pension plan while, at the same time, seeking legal redress against Gopher State for the claimed unpaid contributions. Such an approach would have permitted Central States to protect both its own interests and those of the affected plan participants. Instead, Central States chose to sue Gopher News for the unpaid contributions while – at the same time – it banned plaintiffs from further benefit accrual. By choosing this approach, Central States abandoned the interests of plan participants in favor of protecting its own.
>
> 30. The abandonment of the interests of plan participants violates ERISA's fiduciary standards and the common law of trusts that the statute codifies. Plaintiffs are entitled to a full restoration of the status quo before Central States' termination, thus permitting them to continue to accrue benefits while they continue to work at Gopher News. In addition, plaintiffs are entitled, under ERISA, to their attorneys' fees and all other reasonable costs related to the bringing of this action.

(Am. Compl., Docket No. 54.) Plaintiffs now move for summary judgment against Central States on Count I.

## ANALYSIS

**I.  STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. CENTRAL STATES' PROCEDURAL ARGUMENTS

Central States raises two procedural arguments in opposition to plaintiffs' motion. First, the Fund argues that it is not a proper defendant because it is not a fiduciary. Second, the Fund argues that three of the plaintiffs' theories of recovery are not within the scope of the allegations in the Amended Complaint. The Court agrees.

### A. Central States Is Not a Plan Fiduciary for Purposes of Plaintiffs' § 1132(a)(3) Claim.

"To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). With respect to the first element, plaintiffs allege that Central States "is, within the meaning of those terms in ERISA, a fiduciary to plan participants, which includes plaintiffs." (Am. Compl. ¶ 27, Docket No. 54.) In its answer, Central States denied this allegation, but admitted that "the Trustees [of the Fund] owe a fiduciary duty to plan participants, including the Plaintiffs." (Ans. to Am. Compl. by Central States at 8-9, Docket No. 64.)

As defined in ERISA, a "fiduciary" is a particular kind of "person." A "person" is "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). So defined, a "person" may also be a fiduciary under certain circumstances:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A).

For purposes of plaintiffs' claim under 29 U.S.C. § 1132(a)(3), Central States is not a fiduciary. "Plans are not included within ERISA's definition of 'persons.'" *Boucher v. Williams*, 13 F. Supp. 2d 84, 93 (D. Me. 1998). Hence, a plan "itself is not encompassed by the language of the statute that defines who is a fiduciary and what duties a fiduciary owes to participants and beneficiaries." *Brennan v. Consol. Rail Corp. Matched Sav. Plan*, No. 99-5785, 2000 WL 217664, at *3 (E.D. Pa. Feb. 11, 2000). "A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a plan itself cannot be sued for breach of fiduciary duty." *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991); *cf. In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *13 (E.D. La. Oct. 21, 2008) ("Although the ERISA health plans have fiduciaries, the plans themselves are not their own

fiduciaries."); *Shepherd v. Worldcom, Inc.*, No. H-03-5292, 2005 WL 3844069, at *8 (S.D. Tex. Sept. 9, 2005) ("[P]lans are not included within ERISA's definition of 'persons,' and they are not properly subject to breach of fiduciary duty claims[.]").

Plaintiffs argue that the Fund is a proper defendant because ERISA states that a plan is a legal entity that may sue and be sued. *See* 29 U.S.C. § 1132(d)(1). This argument is unavailing. The fact that ERISA generally allows a plan to sue and be sued does not override the specific statutory language defining a fiduciary.

Plaintiffs cite several cases holding that a plan can be a fiduciary, but those cases are inapposite. They address the question of whether a particular plan has standing to bring suit under § 1132(a)(3), not whether a plan can be sued for breach of fiduciary duty. *See, e.g.*, *U.S. Steel Mining Co. v. Dist. 17, United Mine Workers of Am.*, 897 F.2d 149, 151-52 (4th Cir. 1990); *Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Indus.*, 782 F.2d 577, 581 (6th Cir. 1986).

Plaintiffs further argue that Central States waived this argument by failing to plead it as an affirmative defense. This argument is also unavailing. The first element that a plaintiff must establish to state a claim for breach of fiduciary duty under ERISA is "that the defendants are plan fiduciaries." *Brosted*, 421 F.3d at 465. Central States has consistently denied that it is a fiduciary. (*See* Ans. to Am. Compl. by Central States at 8-9, Docket No. 64.) This defense "merely negates an element of . . . plaintiff[s'] prima facie case," and therefore it is "not truly an affirmative defense and need not be pleaded." *Masuen v. E.L. Lien & Sons, Inc.*, 714 F.2d 55, 57 (8th Cir. 1983). Moreover, plaintiffs had both notice of Central States' position and the opportunity to rebut it. *See First*

*Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). This argument is therefore properly before the Court.

Finally, plaintiffs suggest that the Court construe *Acosta v. Pacific Enterprises* to allow a plan to be joined in an action for breach of fiduciary duty. In *Acosta*, the Ninth Circuit articulated a narrow exception to the rule that a plan cannot be named as a defendant in a claim for breach of fiduciary duty:

> A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a plan itself cannot be sued for breach of fiduciary duty. This rule, however, does not inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of fiduciary duty. **To the extent that a plaintiff seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," the plan may be named as a defendant. 29 U.S.C. §§ 1132(a)(1)(B), 1132(d)** (1988). Thus, even though Acosta cannot sue the SoCal Gas Plan for breach of fiduciary duty *per se*, he may, as he has done here, join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought.

950 F.2d at 618 (emphasis added). Here, however, "[p]laintiffs assert a single legal claim, brought under 29 U.S.C. § 1132(a)(3), against Central States." (Mem. in Supp. at 16, Docket No. 90.) Plaintiffs concede that Eighth Circuit precedent **precludes** them from bringing a claim under § 1132(a)(1)(B) – the type of claim that the plaintiffs brought in *Acosta*. (*Id.* at 16-17 ("[T]heir claim is properly stated under § 1132(a)(3), consistent with the holding of *Hall v. Shaco*, where a plan participant brought a § 1132(a)(3) claim seeking an accounting and an injunction. The Eighth Circuit held this type of relief was unavailable under § 1132(a)(1)(B), and thus properly brought under § 1132(a)(3).").) As Judge Thelton Henderson noted in a similar context:

> Defendants do not contest the fiduciary status of any Defendants except for the Plan, and Defendants are correct that the Plan "cannot be sued for breach of fiduciary duty" because an ERISA plan cannot "act as a fiduciary with respect to its own assets." *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991). A plan may nonetheless be named as a defendant "[t]o the extent that a plaintiff seeks 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'" *id.* (quoting 29 U.S.C. § 1132(a)(1)(B) [ERISA § 502(a)(1)]), **but Balsley brings suit under § 502(a)(3) and not § 502(a)(1)**. . . . Accordingly, the Court GRANTS Defendants' motion to dismiss the Plan from this action.

*Balsley v. Delta Star Employee Stock Ownership*, No. C09-2952, 2009 WL 4823196, at *3 (N.D. Cal. Dec. 10, 2009) (emphasis added). The *Acosta* exception therefore does not extend to plaintiffs' claim for breach of fiduciary duty, which plaintiffs bring solely under § 1132(a)(3).

Plaintiffs concede that "it would have been much cleaner . . . had plaintiffs named the [Fund's] trustees" as defendants, but they contend that "the issue . . . is easily remedied." (Reply Mem. at 8, Docket No. 112.) They suggest that the Fund's trustees could be joined under Rule 20 or Rule 21 of the Federal Rules of Civil Procedure. The Court declines to address this suggestion, which plaintiffs raise for the first time in their reply brief. *Cf. Docken v. Minnesota*, No. 08-4952, 2009 WL 1086522, at *3 n.4 (D. Minn. Apr. 22, 2009). The remainder of the Court's analysis suggests, however, that such action would likely be futile.

In summary, viewing the facts in the light most favorable to Central States, Central States is not a plan fiduciary, and plaintiffs cannot establish the first element of their claim for breach of fiduciary duty. Therefore plaintiffs are not entitled to summary judgment on Count I.

### B. The Misrepresentation, Estoppel, and Botched Audit Theories Are Not Within the Scope of the Allegations in the Amended Complaint.

In response to the Court's finding that "the breaching act has yet to be clearly identified," plaintiffs now identify "three breaching acts" and "four alternative theories of liability" under Count I. (Mem. in Supp. at 18, Docket No. 90.) The first breaching act is the Fund's approvals in 1998 and 2001 of the collective bargaining agreement ("CBA") between Gopher News and Local No. 638. (*Id.*) Plaintiffs argue that "Central States can be liable under ERISA in its fiduciary capacity for making affirmative misrepresentations on breach of fiduciary duty and equitable estoppel theories." (*Id.* (internal quotation marks omitted).) The second breaching act is the Fund's "botched audit" of Gopher News. Plaintiffs argue that the Fund conducted its audit of Gopher News so poorly "that [the Fund] could not possibly have determined whether or not the 'adverse selection' rule was violated." (*Id.*) Plaintiffs argue that this breaching act supports the theory of liability that the Fund failed to discharge its duties in a manner consistent with the prudent man standard under 29 U.S.C. § 1104(a)(1)(B). The third breaching act is the Fund's decision to expel Gopher News while collecting a withdrawal penalty. (*Id.* at 19.) Plaintiffs argue that this breaching act supports the theory that the Fund breached its fiduciary duty by failing to act solely in the interest of participants and beneficiaries in the performance of its duties. *See* 29 U.S.C. § 1404(a)(1)(A).

Central States argues that "[t]he only claim asserted in the Plaintiffs' motion [for summary judgment] that has any basis in the Amended Complaint is the assertion that the Fund breached a fiduciary duty by refusing to accept self-contributions to enable the

Plaintiffs to reach the 30-year threshold." (Mem. in Opp'n at 13, Docket No. 100.) The Court agrees.

The "essential function" of the pleading requirements under the Federal Rules of Civil Procedure "is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (internal quotation marks omitted). When the Court denied Central States' motion for summary judgment on February 5, 2009, it quoted at length the various breaching acts that plaintiffs had defined "[a]t varying times," and it then concluded that "the breaching act has yet to be clearly identified." *Gerhardson*, 2009 WL 294291, at *4. Since that time, plaintiffs have not sought to add any allegations to the Amended Complaint. None of the breaching acts that the Court identified in its February 2009 order could plausibly give Central States notice that it allegedly breached its fiduciary duties by "approving" the 1998 and 2001 CBAs. Nor did those breaching acts call into question the quality of the audit that Central States performed. The Amended Complaint repeatedly **concedes** that Gopher News had violated the adverse selection rule, demonstrating that plaintiffs took no issue with Central States' audit. (Am. Compl. ¶ 29, Docket No. 54 ("Central States had other options available to it upon discovery of Gopher News's violation of the adverse selection policy."); *id.* ¶ 34 ("Local 638 has known that Gopher News was in violation of its 'adverse selection' policy for at least the last 10 years[.]").)

Although "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late

into the litigation for the purpose of avoiding summary judgment." *N. States Power Co.*, 358 F.3d at 1057. The Court has carefully examined the allegations contained in the Amended Complaint, including Count I, and finds that "[t]here is simply nothing alleged in the [Amended] Complaint that would have notified [Central States] of" the first two breaching acts that plaintiffs now articulate, or of the misrepresentation, estoppel, and botched audit theories of liability arising out of those breaching acts. *Cf. id.* at 1057. These theories are "outside the scope of the [Amended] Complaint's allegations." *Cf. Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1079 n.2 (D. Minn. 2007).

Plaintiffs argue that when they filed their complaint, they "couldn't have known (1) that Central States' audit of Gopher News was so poor that it couldn't and didn't demonstrate adverse selection and (2) that Central States had twice approved the CBA language that in 2006 it said demonstrated adverse selection." (Reply Mem. at 5, Docket No. 112.) Discovery closed on October 30, 2009. (Docket No. 82.) Plaintiffs filed their motion for summary judgment on March 29, 2010. (Docket No. 88.) Assuming for the sake of argument that plaintiffs could not have learned of these facts before filing the Amended Complaint in September 2008, they nonetheless had an obligation, prior to the close of discovery, to seek leave to amend the complaint to give Central States fair notice of the basis for the breach of fiduciary duty claim. Instead, it appears that plaintiffs disclosed these theories to Central States for the first time when they filed their motion for summary judgment. Moreover, the Court finds plaintiffs' argument implausible. As members of Local No. 638, plaintiffs had ready access to the 1998, 2001, and 2006 CBAs. As plaintiffs concede, the "combination job" disclosure language appears in each

of those CBAs.  Plaintiffs provide no explanation for their assertion that they "couldn't have known . . . that Central States had twice approved" that language.

Plaintiffs further argue that all four legal theories "are embraced within a single legal claim brought under 29 U.S.C. § 1132(a)(3).  Plaintiffs don't need to add additional counts to express their legal claims." (Reply Mem. at 5, Docket No. 112.)  Central States does not argue that plaintiffs need to allege additional counts.  Rather, Central States argues that the Amended Complaint did not give it fair notice of the misrepresentation, estoppel, and botched audit theories that plaintiffs now articulate.  Section 1132(a)(3) allows certain persons to bring a civil action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Such language may be sufficiently broad to encompass the misrepresentation, estoppel, and botched audit theories within a single count.  But this broad language is not sufficient, on its own, to provide Central States with the notice required under Rule 8(a) for the theories plaintiffs now articulate.

Finally, plaintiffs assert that Central States has not suffered prejudice.  (Reply Mem. at 5, Docket No. 112.)  Central States argues that it "is prejudiced by the injection of new issues at this late date," after discovery has closed.  (Mem. in Opp'n at 20, Docket No. 100.)  As one example, it argues that if plaintiffs had timely raised the botched audit theory, Central States "would have deposed the [warehouse] drivers."  (*Id.*)  Plaintiffs respond that deposing the warehouse drivers would have done nothing to cure the botched audit.  (Reply Mem. at 5, Docket No. 112.)  Plaintiffs' argument is illogical. The Amended Complaint concedes that Gopher News violated the adverse selection rule.

Central States proceeded through discovery knowing that plaintiffs had made that critical concession. If Central States had had timely notice of the botched audit theory, it would have conducted discovery about the audit itself and the basis for Central States' conclusion that Gopher News violated the adverse selection rule. Similarly, if Central States had had timely notice of the misrepresentation theory, it would have conducted discovery related to the elements of misrepresentation under ERISA. Instead, Central States received notice of these theories five months after the close of discovery. The Court finds that Central States would suffer prejudice if the Court were to require it to defend against theories plaintiffs articulated for the first time long after the close of discovery.

Because the misrepresentation, estoppel, and botched audit theories are not within the scope of the allegations in the Amended Complaint, and because plaintiffs did not give Central States notice of these theories until long after the close of discovery, the Court declines to consider these theories as part of plaintiffs' claim for breach of fiduciary duty in Count I.

Central States concedes that the Amended Complaint embraces plaintiffs' remaining theory – that the Fund breached its fiduciary duty by refusing to accept self-contributions to enable plaintiffs to reach the 30-year threshold. (Mem. in Opp'n at 13, Docket No. 100.) The Court considers this theory in the following section.

## III. CENTRAL STATES' REFUSAL TO ACCEPT SELF-CONTRIBUTIONS

Plaintiffs argue that Central States "was not required to expel Gopher News from the fund but instead had the discretion to fashion a solution that is not expressly permitted by Central States' trust and related documents." (Mem. in Supp. at 33, Docket No. 90.) Because Central States refused to allow plaintiffs to make self-contributions, plaintiffs argue, Central States breached its fiduciary duty in holding "its own financial interests above the interest of the four participants, which is contrary to the underpinnings of the ERISA statute." (*Id.*)

### A. Standard of Review

The parties dispute whether the Court should review the Fund's decision not to allow self-contributions under an abuse of discretion or arbitrary and capricious standard of review, or under a more rigorous standard. As the Court noted in its previous order, "a different standard of review may apply depending on how the breaching act is defined." *Gerhardson*, 2009 WL 294291, at *4.

Plaintiffs contend that the Court should use the "prudent man" standard of review articulated in *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 334 (3d Cir. 1984), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The Court finds that *Struble*'s standard of review does not apply to plaintiffs' breach of fiduciary claim. First, Eighth Circuit precedent strongly suggests that the Court should review the Fund's decision under the arbitrary and capricious and abuse of discretion standard. The Eighth Circuit has declined to follow

*Struble* in reviewing a denial of benefits claim. *Agee v. Armour Foods Co.*, 834 F.2d 144, 145 (8th Cir. 1987) (per curiam). In *Borntrager v. Central States Southeast & Southwest Areas Pension Fund*, the Eighth Circuit stated that a plan's reasons for expelling an employer "would be subject to arbitrary, capricious, and abuse of discretion review." 577 F.3d 913, 920 n.2 (8th Cir. 2009). Second, the Third Circuit itself has limited *Struble*'s standard of review to "claims analogous to those addressed by *Struble*." *Moench v. Robertson*, 62 F.3d 553, 565 (3d Cir. 1995). Such claims "involve[] a decision by an ERISA fiduciary to give a benefit to the employer rather than to the beneficiary[.]" *Id.* at 563. Plaintiffs do not make such a claim here. The Court therefore reviews Central States' decision under the more deferential standard of review.

### B. Plaintiffs Are Not Entitled to Summary Judgment Based on the Fund's Decision Not to Allow Self-Contributions.

The Central States, Southeast and Southwest Areas Pension Plan, effective January 1, 1985 and as amended through October 31, 2008, states:

> **Self-Contributions cannot be made and are not acceptable for any period after December 31, 2003, unless the period of the layoff, sick leave, other leave of absence or approved strike, on which the Self-Contributions are based, commenced before and was continuing on January 1, 2004. All references to Self-Contributions in this Section 1.08 and elsewhere in this Pension Plan are subordinate to the limitations of the preceding sentence.**

(2003 Plan § 1.08(b), Nelson Aff. Ex. 3, Docket No. 150 (emphases in original).)

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . **in accordance with the documents and instruments governing the plan**[.]" 29 U.S.C. § 1104(a)(1)(D)

(emphasis added). The Court does not understand how Central States "violate[s] its fiduciary duties under ERISA by following the terms of the Plan when it has an obligation to do so under ERISA." *Cf. Newell Operating Co. v. Int'l Union of United Auto., Aerospace, & Agric. Implement Workers of Am.*, 532 F.3d 583, 589 (7th Cir. 2008), *overruled on other grounds by Envision Healthcare, Inc. v. Preferred One Ins. Co.*, 604 F.3d 983 (7th Cir. 2010).

Even if Central States had discretion to ignore this plan language, plaintiffs have not established that they are entitled to summary judgment on their breach of fiduciary duty claim based on Central States' **adherence** to this plan language and refusal to exercise such discretion to bend the rules in plaintiffs' favor. The Court would review the Fund's decision under an abuse of discretion standard. *See Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008). Viewing all of the facts and evidence in the light most favorable to Central States, Central States did not abuse its discretion in adhering to plan language rather than offering plaintiffs the opportunity to make self-contributions.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the **IT IS HEREBY ORDERED** that plaintiffs' Motion for Summary Judgment [Docket No. 88] is **DENIED**.

DATED: August 30, 2010  
at Minneapolis, Minnesota.

                                                          s/ John R. Tunheim  
                                                         JOHN R. TUNHEIM  
                                                       United States District Judge