# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

STEVEN GERHARDSON, RON HANEK,
MIKE JOHNSON, and JIM COSTELLO,

Civil No. 08-537 (JRT/JJG)

Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**

GOPHER NEWS COMPANY; CENTRAL
STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND;
and LOCAL NO. 638 OF THE
MISCELLANEOUS DRIVERS, HELPER
& WAREHOUSEMEN'S UNION,

Defendants.

---

Jordan M. Lewis and Wood R. Foster, Jr., **SIEGEL BRILL GREUPNER DUFFY & FOSTER, P.A.**, 1300 Washington Square, 100 Washington Avenue South, Minneapolis, MN 55401; Johanna J. Raimond, **LAW OFFICES OF JOHANNA J. RAIMOND LTD.**, 321 South Plymouth Court, Suite 1515, Chicago, IL 60604, for plaintiffs.

James D. Kremer, Michael Iwan, and Christopher Amundsen, **DORSEY & WHITNEY, LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for defendant Gopher News Company.

Roger A. Jensen, **MILLER O'BRIEN CUMMINS PLLP**, One Financial Plaza, Suite 2400, 120 South Sixth Street, Minneapolis, MN 55402, for defendant Local No. 638.

Anthony E. Napoli and Albert M. Madden, **CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION AND HEALTH AND WELFARE FUNDS**, 9377 West Higgins Road, Rosemont, IL 60018; and Jennifer G. Daugherty, **ROBINS KAPLAN MILLER & CIRESI LLP**, 800 LaSalle Avenue, Suite 1500, St. Paul, MN 55101, for defendant Central States, Southeast and Southwest Areas Pension Fund.

Plaintiffs Steven Gerhardson, Ron Hanek, Mike Johnson, and Jim Costello ("plaintiffs") brought claims against their union ("Local 638"), their employer Gopher News Company ("Gopher"), and the multi-employer trust fund they pay into monthly (the "Fund"), administered by Central States, Southeast and Southwest Areas Pension Fund ("Central States").  Plaintiffs allege breach of the duty of fair representation, breach of contract, and breach of fiduciary duty.  Local 638, Gopher, and Central States each moved for summary judgment, and Local 638 and Gopher moved for summary judgment against each other on Count III of Gopher's cross-claim against Local 638.  Because plaintiffs brought their case outside of the six-month statute of limitations, the Court grants Gopher and Local 638's motions for summary judgment against plaintiffs. Because Central States cannot be a fiduciary under the relevant law as required to support plaintiffs' claim, its motion for summary judgment is granted.  Finally, since there are genuine issues of material fact as to Gopher's cross-claims, and the Court finds they are not preempted, the Court denies the cross-motions for summary judgment between Gopher and Local 638.

## BACKGROUND

Gopher distributes magazines and other periodicals to outlets throughout the Upper Midwest and  has employed plaintiffs as truck drivers for many years.  Plaintiffs are long-standing members of Local 638 which is the collective bargaining agent for certain Gopher employees.  The collective bargaining agreements ("CBAs") between

Gopher and Local 638 established the terms and conditions under which plaintiffs worked.  (Watson Aff. Exs. R-T, Docket No. 91.)

Central States administers a multi-employer pension fund that is primarily subsidized by contributions from employers through negotiated CBAs with local unions, that are affiliated with the International Brotherhood of Teamsters.  (Aff. of Peter Priede ¶¶ 7-12, Docket No. 123.)  The Fund is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Act of 1980.  29 U.S.C. §§ 1301 *et seq.*  Gopher entered into a participation agreement with Central States in which plaintiffs participated.  (Watson Aff. Ex. J, Docket No. 92.)

The Fund has an "adverse selection" rule, which prohibits an employer from entering into a CBA in which only some employees with a particular job classification participate in the Fund.  (*See* Docket No. 114 Ex. 9).  The adverse selection rule eliminates the possibility that the Fund will receive contributions only on behalf of older employees who are nearing retirement, without additional contributions on behalf of younger employees whose benefits are not fully vested.  (*See id*.)  Allowing an employer to select only older employees to participate in the Fund is considered "actuarially unsound."  (*Id.*)  If no new employees participate in the Fund, then after the older employees retire and begin drawing on their retirement benefits, the Fund's assets will quickly be depleted.  (*Id.*)

Gopher employs "inside workers," in addition to truck drivers such as plaintiffs. The truck drivers have separate CBAs than the inside workers.  The truck drivers' CBA is called the "Drivers' CBA," and the inside workers' CBA is the "Warehouse" or "Inside

CBA." (Watson Aff. Exs. S-T, Docket No. 94.)  The inside workers do not participate in the Fund.   Beginning in the mid-1990s, the demand for Gopher's delivery services decreased dramatically, when most of its accounts changed from delivery twice a week to delivery once a week.  (*See* Weber Dep. 69:1-11, Watson Aff. Ex. F, Docket No. 92.)  As a result, Gopher created "combination jobs" that included some driving work and some "inside" work.  (*Id.* 69:1-72:10.)  Warehouse workers filled these combination jobs, and are referred to through the parties' motions as "Warehouse/Drivers" and "Relief Drivers."  (*Id.* 70:7-72:14.)  The 1998 and 2001 CBAs for Gopher's truck drivers disclosed the following information about the new "combination jobs":

> The parties agree that the changing nature of the business may require that driving positions may be combined with work outside the present drivers' bargaining unit in order that a 40 hour week is maintained. In respect to this provision, combination jobs, including driving work, may be filled by employees from the warehouse bargaining unit subject to their own wages, benefits and working conditions.

(Watson Aff. Exs. R, S, Docket No. 94.)

On January 3, 2006, Local 638 sent Central States a copy of its 2005-2011 CBA, which contained the same notice of "combination jobs" that appeared in the 1998 and 2001 CBAs.  (Watson Aff. Ex. V, Docket No. 94.)  Soon thereafter, Central States audited Gopher. (*Id.* at Ex. W.)

In 2006, after completing the audit, Central States concluded that Gopher had violated the plan's adverse selection clause through implementation of the combination jobs since the Warehouse/Drivers did not participate in the Fund.  (*See* Docket No. 118

Ex. 20.)  Instead, the Warehouse/Drivers, along with other inside workers, participated in an employer sponsored 401k retirement plan.

Because Central States concluded that Gopher had violated the adverse selection rule, Central States terminated its relationship with Gopher, effective January 31, 2007. (Watson Aff. Ex. X, Docket No. 94.)  Thereafter, Gopher stopped making contributions to the Fund on behalf of plaintiffs.  After the termination date, "plaintiffs could no longer accrue any additional pension benefits with Central States," unless they found employment with another employer participating in the Fund.  (Am. Compl. ¶ 19; Ans. to Am. Compl. ¶ 19, Docket No. 64.)   The termination had significant financial repercussions for plaintiffs, who were nearing retirement because the plan "increases benefit levels in 10-year employment intervals." (Am. Compl. ¶ 20.) "[B]ecause none of the plaintiffs [had] attained 30 years of employment as of" January 31, 2007, "their pension payments were frozen at their 20 year level."  (*Id.*)  Plaintiffs claim, *inter alia*, that Central States should have permitted plaintiffs to make "self-contributions" to the Fund after Central States terminated Gopher, so that they could reach the thirty-year threshold and be eligible for the highest level of retirement benefits, however this Court previously rejected this contention, finding that "Central States did not abuse its discretion in adhering to plan language rather than offering plaintiffs the opportunity to make self-contributions.  (Order at 20, Docket No. 164.)

Plaintiffs appealed Central States' decision on February 14-15, 2007.  (Watson Aff. Exs. Y-Z, Docket No. 94.)  On June 20, 2007, the Fund notified the parties that on June 12, 2007 it affirmed its decision to terminate Gopher's participation.  (*Id.* Ex. AA.)

In its denial, Central States said that plaintiffs had completed all steps available under the Fund's appellate process, and that if they did not agree with the determination, they had the right to bring an ERISA lawsuit. (*Id.*)

On February 26, 2008, plaintiffs filed a complaint against Gopher, Central States, and Local 638. (Compl., Docket No. 1.) On February 5, 2009, the Court denied Central States' first motion for summary judgment without prejudice. (Order, Docket No. 76.) The Court rejected Central States' argument that plaintiffs were merely repackaging an ERISA benefit denial claim as a breach of fiduciary duty claim. (*Id.*) On August 30, 2010, the Court denied plaintiffs' motion for summary judgment against Central States on Count I of the amended complaint. (Order at 20-21, Docket No. 164.) Gopher brought cross-claims against Local 638 on March 24, 2008, for fraudulent or negligent misrepresentation, fraud, conspiracy, indemnification, and for a declaratory judgment. (Docket No. 9.) Local 638 brought a cross-claim against Gopher also on March 24, 2008, for indemnification and contribution in the amount of Local 638's liability to plaintiffs if Local 638 was found so liable. (Docket No. 11.)

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   LOCAL 638 AND GOPHER'S MOTIONS FOR SUMMARY JUDGMENT ON COUNTS 2 AND 3 OF PLAINTIFFS' AMENDED COMPLAINT

Local 638 and Gopher move for summary judgment on Counts 2 and 3 of the amended complaint, on the grounds that plaintiffs' claims are barred by a six-month statute of limitations.    Section 301 of the Labor Management Relations Act ("LMRA") permits individual union members to bring lawsuits to vindicate their "uniquely personal rights . . . such as wages, hours, overtime pay, and wrongful discharge." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976); *see also* 29 U.S.C. § 185. A lawsuit by an individual employee is labeled a "hybrid" claim because it combines a claim against the union for breach of the union's duty of fair representation with a breach of contract claim against the employer. *Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 800 (8th Cir. 1998). This case presents such a claim.

The proper limitations period for a § 301 breach of contract/duty of fair representation claim is six months. *Schuver*, 154 F.3d at 800 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983) (holding six-month period of limitations provided in § 10(b) of the NLRA, 29 U.S.C. § 160(b), governs in hybrid § 301 suits as to claims against both the employer and the union)). "The [National Labor Relations Board

("NLRB")] has consistently held that all breaches of a union's duty of fair representation are in fact unfair labor practices." *DelCostello*, 462 U.S. at 170.  A § 301 claim generally accrues "when the claimant discovers, or in exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."  *Schuver*, 154 F.3d at 800; *Evans v. Nw. Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir. 1994) ("A cause of action for a breach of a union's duty of fair representation accrues when a party should reasonably have known of the union's alleged breach."); *see also Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993) ("A cause of action ordinarily accrues when the plaintiff could first have successfully maintained a suit based on that cause of action." (alterations and internal citations omitted)).

Plaintiffs, Local 638, and Gopher all agree that the statute of limitations for plaintiffs' § 301 claims is six months.  Local 638 argues that Central States' denial of plaintiffs' appeal on June 20, 2007, was the last possible date on which the claim could have accrued.[1]  Local 638 then notes that plaintiffs' complaint was not filed until February 26, 2008, rendering it untimely by two months.  (Compl., Docket No. 1.)

Complicating matters, plaintiffs filed a motion to intervene in litigation in the Northern District of Illinois on December 10, 2007, ten days before the six month statute of limitations expired if June 20, 2007, is used as the date the action accrued.  Thus, plaintiffs argue, filing the motion to intervene constituted the commencement of an

---

[1] The letter denying the appeal was dated June 20, 2007.  However the letter indicated that the appeal had actually been denied on June 12, 2007.  (Watson Aff. Ex. AA, Docket No. 94.)

[2] *E.g. Braxton v. Virginia Folding Box Co.*, 72 F.R.D. 124, 126 (E.D. Va. 1976) ("The

action, tolling the statute of limitations on their § 301 claim.   In support of their

argument, plaintiffs cite *United States for Use and Benefit of Canion v. Randall & Blake*,

in which the Fifth Circuit stated:

> We have found . . . almost unanimous agreement among the district courts
> . . . [that] filing of the motion for intervention, and not the later approval of
> the motion and actual filing of the complaint, determines the
> commencement of the action for purposes of the statute of limitations.

817 F.2d 1188, 1192 (5th Cir. 1987).   Plaintiffs cite additional cases supporting the

proposition that filing a motion to intervene can toll a statute of limitations.[2]

However, every case relied on by plaintiffs involved motions to intervene that

were granted, not denied.   In support of the principle that it is the filing date only of a

**successful** motion to intervene that can toll the statute of limitations, both Local 638 and

Gopher cite *Korwek v. Hunt*, which held it is not the act of filing the motion that tolls the

limitations period, instead, "the date of filing of a **successful** intervention motion is taken

to be the date the action is brought . . . in situations in which the formal complaint is not

filed until after intervention is granted."   649 F. Supp. 1547, 1548 (S.D.N.Y. 1986)

(emphasis added).   However, "[a] dismissal without prejudice does not toll a statute of

---

[2] *E.g. Braxton v. Virginia Folding Box Co.*, 72 F.R.D. 124, 126 (E.D. Va. 1976) ("The plaintiffs' filing of a motion to intervene accompanied by proper pleadings is regarded as the commencement of an action for purposes of determining whether the action is barred by the running of the statute of limitations."); *Securities and Exchange Comm'n v. Keller Bros. Sec. Co.*, 30 F.R.D. 532, 533-34 (D. Mass. 1962) ("The position of the receivers . . . seems to be that in determining whether applicants' intervention was timely, the significant date is that on which intervention is allowed by the court and not that on which the motion to intervene is filed. **This contention must be rejected.** It is true that intervention here is not a matter of right and that the applicants do not formally become parties to the action until intervention is allowed by the court. However, when applicants here filed their motions and petitions and served them upon the receiver, they had done all that was required of them under the intervention procedure prescribed by [Rule 24(d)]." (emphasis added)).

limitation. . . . [O]nce a dismissal without prejudice is entered and the pending suit is dismissed, it is as if no suit had ever been filed." *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995); *see also In re Napster Inc. Copyright Litig.*, Nos. C MDL-00-1369-MHP, C 04-3004, 2005 WL 289977, at *4-5 (N.D. Cal. Feb. 3, 2005) ("[D]enial of a motion to intervene is analogous to a dismissal of a complaint without prejudice, which does not toll the statutory filing period.").

In its order denying plaintiffs' motion to intervene in the related litigation in the Northern District of Illinois, the Court stated:

> [T]he drivers learned in late 2006 that the Plan had terminated the Company's participation in the pension plan and they also knew that the Company had ceased making contributions to their pension. These facts should have alerted the drivers to the fact that there might be litigation between the Company and the Plan that would adversely affect their interests.

*Central States, Se. and Sw. Areas Pension Fund and Howard McDougall, Trustee v. Gopher News Co.*, 542 F. Supp. 2d 823, 829 (N.D. Ill. 2008).

Though *Randall & Blake* sets forth a potentially useful rule of law for plaintiffs, every case plaintiffs advance to support their interpretation features a grant of the motion to intervene, unlike in this case. Further, one case cited by plaintiffs seems to particularly undermine their position. In *Jack v. Travelers Ins. Co.*, 22 F.R.D. 318 (E.D. Mich. 1958), the district court said "[i]n relation to Rule 24(b) the Court decides that a motion to intervene which sets forth the cause of action sought to be asserted, or which has attached thereto a copy of the proposed complaint, is sufficient compliance with the statute of

limitations, **if such motion is properly filed prior to the running of the statute** . . . ."
*Id.* at 319.

The Illinois District Court denied plaintiffs' motion to intervene in part because the motion to intervene **itself** was untimely.  *Central States*, 542 F. Supp. 2d at 828 ("[T]he individual drivers' motion is untimely.  Here, the individual drivers failed to file the motion to intervene [until] nearly one year after the Plan initiated the suit.").  Given Eighth Circuit precedent regarding the effect of the granting of a motion to dismiss without prejudice (which does not toll the statute of limitations), the Court cannot construe a failed motion to intervene to have a tolling effect on the present litigation.  *Garfield*, 57 F.3d at 666.  Thus, the Court finds that plaintiffs did not bring their § 301 claim within the statute of limitations, and grants Local 638 and Gopher's motions for summary judgment on Counts 2 and 3 of the Amended Complaint.[3]

## III.   CENTRAL STATES' MOTION FOR SUMMARY JUDGMENT ON COUNT 1 OF PLAINTIFFS' AMENDED COMPLAINT

On August, 30, 2010, the Court denied plaintiffs' motion for summary judgment, since the facts viewed in a light most favorable to non-movant Central States did not establish that Central States was a fiduciary of plaintiffs.  (Order, Docket No. 164.) Additionally, the Court held that plaintiffs' misrepresentation, estoppel, and botched

---

[3] Plaintiffs raise an additional argument in their omnibus motion in response to Gopher's assertion that the statute of limitations began running on January 31, 2007, that they could not have known all relevant facts until they knew the outcome of their appeal process, and that Gopher's formulation of the rule encourages inefficiency by suggesting that plaintiff's should invoke the judicial process before there is a dispute to litigate .  (Pls.' Opp'n at 6, Docket No. 143.)  The argument is not analyzed above because even taking June 20, 2007 as the date on which the claim accrued, plaintiffs did not bring their case within the statute of limitations.

audit theories were not within the scope of the allegations in the amended complaint.  (*Id.* at 12 ("Central States is not a plan fiduciary, and plaintiffs cannot establish the first element of their claim for breach of fiduciary duty.").)   Central States moves for summary judgment on Count 1 of plaintiffs' amended complaint addressing nearly the same issues.  Plaintiffs' opposition states only that "plaintiffs have already presented to the Court their answers to the [arguments that Central States is not a fiduciary], in their original summary judgment brief [and will not gain anything by repeating them]."  (Pls.' Opp'n at 3, Docket No. 143.)  Because the Court determines that Central States' is not a plan fiduciary the Court grants Central States' motion.  *See Boucher v. Williams*, 13 F. Supp. 2d 84, 93 (D. Me. 1998) ("Plans are not included within ERISA's definition of 'persons.'"); *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) ("A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a plan itself cannot be sued for breach of fiduciary duty."); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *13 (E.D. La. Oct. 21, 2008) ("Although the ERISA health plans have fiduciaries, the plans themselves are not their own fiduciaries."); *Shepherd v. Worldcom, Inc.*, No. H-03-5292, 2005 WL 3844069, at *8 (S.D. Tex. Sept. 9, 2005) ("[P]lans are not included within ERISA's definition of 'persons,' and they are not properly subject to breach of fiduciary duty claims.").

## IV.    LOCAL 638'S MOTION FOR SUMMARY JUDGMENT

### A.    Abandonment of Cross-Claim

Local 638 argues that Gopher abandoned its cross-claim when Gopher filed its answer to plaintiffs' first amended complaint, because the answer did not include the cross-claim or mention Local 638 in the Demand for Judgment.   In support of this argument, Local 638 cites *Bremer Bank, Nat. Ass'n v. John Hancock Life Ins. Co.*, No 06-1534, 2009 WL 702009 (D. Minn. Mar. 13, 2009), in which the Court found that a **counter-claim** was either abandoned or no longer pending when it was not re-pleaded in the answer to an amended complaint.   The *Bremer* court in turn relied on *General Mills v. Kraft Foods Global, Inc.*, 495 F.3d 1378, 1380-81 (8th Cir. 2007), which held that a counter-claim that was not re-pleaded in an amended pleading was no longer pending. Local 638 asks the Court to apply the reasoning of the *Bremer* and *General Mills* courts regarding counter-claims to the cross-claims at issue here.

The parties' conduct since September 2008 indicates that they considered the cross-claims to be live.   Gopher re-asserted its cross-claims in its answer to Local 638's cross-claims in April 2008, and its answer has never been amended.  (Gopher's Cross-Claim Answer at 1, Docket No. 18.)   Additionally, Local 638 asserted its cross-claim against Gopher in its answer to the plaintiffs' complaint, but when it later responded to Gopher's cross-claim via a separate answer, it did not re-assert its cross-claim against Gopher.   Further, both Gopher and Local 638 have engaged in cross-claim specific written discovery since Gopher allegedly abandoned its cross-claims.  (Amundsen Aff. July 13, 2010, Exs. 1-6, Docket No. 147.)

Local 638 has not cited, nor is the Court independently aware of, a case where a court dismissed a cross-claim because a defendant failed to include it in a subsequently filed amended answer to an amended complaint by a different party. In *General Mills* and *Bremer*, the defendants' counter-claims were deemed abandoned because they failed to actively pursue them. *See Bremer Bank*, 2009 WL 702009, at *12 (denying defendant's summary judgment motion on an indemnification claim where "nearly two years pass[ed] without discovery or any action on the counterclaim."); *Gen. Mills*, 487 F.3d at 1381 (holding that a counter-claim on which no action was taken was no longer pending after defendant successfully moved to dismiss all claims in amended complaint). By contrast, Gopher expressly incorporated its cross-claims into a separate pleading and has pursued the cross-claims in every phase of this litigation.

Though Gopher did not incorporate its previous arguments, or counter- and cross-claims by reference in its answer to the amended complaint, Gopher did do so in its answer to the initial complaint, and in a separate answer to Local 638's cross-claims. (First Am. Answer to Compl., Docket No. 15; Answer to Cross-Claim of Local 638, Docket No. 18.)  On the record before the Court, there is no basis to find that Gopher abandoned its cross-claims, and the motion is denied.

### B.    *Garmon* Preemption

The NLRB has exclusive primary jurisdiction over claims involving conduct arguably prohibited by federal labor law. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably

subject to [Sections 157 or 158] of the Act, the States as well as federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."). "[T]he decision to preempt . . . must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies . . . ." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 189 (1978) (internal quotation marks omitted). However,

> [t]he fact that a particular activity may constitute an unfair labor practice under section [15]8 of the [LMRA], does not necessarily preclude the district court's jurisdiction under section 301 of the Act if that activity also constitutes a breach of the collective bargaining agreement. . . . The *Garmon* preemption doctrine is simply not relevant where there is a claim under section 301 asserting a breach of the collective bargaining agreement. Thus, in cases . . . where a party's conduct gives rise to both a charge of an unfair labor practice and a claimed breach of a collective bargaining agreement, the NLRB and the district court share concurrent jurisdiction.

*Local Union No. 884, United Rubber, Cork, Linoleum, and Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995) (internal citations, alternations, and quotation marks omitted). "Section 301, moreover, applies not only to suits for breach of a collective bargaining agreement once it is duly formed, but also to suits impugning the existence and validity of a labor agreement . . . ." *Rozay's Transfer v. Local Freight Drivers*, Local 208, 850 F.2d 1321, 1326 (9th Cir. 1988).

Local 638 argues that Gopher's cross-claims are preempted by federal labor law and that all the activities implicating Gopher took place within the context of collective bargaining and are therefore unfair labor practices within the sole jurisdiction of the NLRB.

In *Trustees of the Twin Cities Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, the Eighth Circuit found that "once any party to an action asserts a contractual violation there is broad subject matter jurisdiction . . . to adjudicate related issues of contract validity such as fraud." 450 F.3d 324, 330 (8th Cir. 2006). Further, "[i]n its cases on § 301 preemption, the Supreme Court has distinguished those which require interpretation or construction of the CBA from those which only require reference to it. An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication." *Id.* at 330 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994)). Also, "fraudulent concealment may give rise to an independent cause of action if the plaintiff has been directly harmed as a result of the defendant's deliberate concealment of material facts." *Id.* at 331. By contrast, in *Allis-Chalmers Corp. v. Lueck*, the Supreme Court found that an employee's common law fiduciary duty claim could not be resolved without interpreting the CBA because the employer's fiduciary duties turned on the **extent** of its contractual good faith obligations, thus § 301 preemption applied. 471 U.S. 202, 215-18 (1985).

Plaintiffs have asserted contractual violations which provide concurrent subject matter jurisdiction with the NLRB. *See Superior Waterproofing, Inc.*, 450 F.3d at 330. The issues in the cross-claims case focus on the process by which the CBA was negotiated, not the specific terms of the CBA. Gopher's claims are that Local 638's conduct rendered the CBA void through false representations and fraud. Such a claim requires an analysis of the conditions surrounding the negotiation of the CBA, but does not require the Court to interpret the CBA. Because the existence and validity of a

contract is challenged, and because the Court need only refer to the CBA, instead of interpreting it, neither *Garmon* nor § 301 preemption apply.   Thus, the Court denies Local 638's motion for summary judgment on Count III of Gopher's cross-claims.

## V.   GOPHER'S MOTION FOR SUMMARY JUDGMENT[4]

Gopher moves for summary judgment on Count III of its cross-claim against Local 638 for fraud.   Gopher asserts that Local 638 committed fraud, or intentional misrepresentation, by withholding information related to Central States' planned audit of the Fund, which induced Gopher to remain in the Fund when it otherwise may not have.

An intentional misrepresentation claim requires plaintiffs (1) to allege that defendant made a false representation of a material fact susceptible of knowledge, (2) which the representor knows to be false, (3) with the intent to induce the other party to act, (4) which party is in fact induced to act in reliance on the representation, and (5) in so doing suffers damages attributable to the misrepresentation.   *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *see also Jane Doe 43C v. Diocese of New Ulm*, No. A10-374, 2010 WL 3397026, at *5 (Minn. Ct. App. Aug. 31, 2010). Gopher argues that all elements of its common law claim for fraud have been met, and no genuine issue of material fact exists as to those elements.

---

[4]   Local 638 raises an issue about the total number of words in Gopher's motions for summary judgment, noting that the total word count for the motions was 13,135, which is 1,135 words longer than the 12,000 words allowed under Local Rules 7.1(b)(4) and (d).   Local 638 argues that because the briefs exceed the 12,000 word limit, the Court should strike any reply memoranda.   Local 638 raises a good point, but because the rule's application is unclear in this setting, the Court will not strike Gopher's reply.

Gopher argues that Local 638 made a false representation by withholding material information regarding Central States' planned audit until after it completed negotiating the 2005 Drivers' CBA. "One who speaks must say enough to prevent his words from misleading the other party." *Klein v. First Edina Nat. Bank*, 196 N.W.2d 619, 622 (Minn. 1972). "One with special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." *Id.*; *Simonsen v. BTH Props.*, 410 N.W.2d 458, 461 (Minn. Ct. App. 1987) ("Though one may be under no duty to speak as to a matter, if he undertakes to do so . . . he is bound . . . not to suppress or conceal any facts within his knowledge which materially qualify those stated." (alteration and emphasis omitted)). "A statement of fact is material if it would naturally affect the conduct of the party addressed." *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn. Ct. App. 1985).

Gopher argues that Local 638 withheld the information to dissuade Gopher from withdrawing from the Fund and that if it had known of the audit it would not have agreed to continue participating in the Fund under the Drivers CBA. (Weber Dep. 125:16-24, Ex. 1, Docket No. 110); (Hanek Dep. 27:1-16, Watson Aff. Ex. D, Docket No. 92.) Gopher avers that such withholding is a violation of Local 638's duty to bargain in good faith and to furnish information relevant to the negotiations. *Rozay's Transfer*, 850 F.2d at 1330; *see also NLRB v. Wachter Const., Inc.*, 23 F.3d 1378, 1385 (8th Cir. 1994) ("The union is . . . obliged to furnish the employer with relevant information."). However, with respect to fraudulent misrepresentation, "central to such a claim is that 'there must be a suppression of facts which one party is under a legal or equitable obligation to

communicate to the other, and which the other party is entitled to have communicated to him.'" *Flynn v. American Home Products Corp.*, 627 N.W.2d 342, 350 (Minn. Ct. App. 2001).

*Flynn* and *Klein* both state valid duties by which the parties must abide. Representatives from Local 638 and Central States testified that it was common to delay an audit until after negotiations were complete.  However, it is likely that Local 638 knew Gopher would choose to leave the Fund if it learned of an audit by Central States, thus negotiations with Gopher arguably required Local 638 to disclose the planned audit. Therefore, the Court determines that there are genuine issues of material fact as to whether Local 638 breached a duty to Gopher through false representations and failure to provide material facts.

Gopher next argues that Local 638 knew Central States questioned the propriety of the pension terms, and knew that its silence would give Gopher the false impression that Central States had no concerns with Gopher's pension contribution practices.  (Hanek Dep. 27:1-16.)  As such, Gopher argues Local 638's silence constituted a deviation from the standards Gopher had the right to expect.  *See Powell v. Cont'l Mach.*, A05-785, 2006 WL 44339, at *4 (Minn. Ct. App. Jan. 10, 2006).  Gopher also alleges that Local 638 misled Gopher for the purpose of negotiating Gopher's continued participation in the Fund.

Scott Lecy, a business agent with Local 638, testified that though he had knowledge about Central States' future audit intentions, he didn't disclose it because he believed it was a random routine audit.  (Lecy Dep. 30:10-17, Watson Aff. Ex. N, Docket

No. 93.)  Lecy also testified that disclosing the audit would put an additional issue on the table that could delay reaching agreement on a new CBA, which he wanted to avoid.  (*Id.* 28:20-29:6.)   Additionally, Carol Evans, division manager of the field audits and contracts divisions at Central States, testified that it was common to defer an audit while the parties were in negotiations.  (Evans Aff. ¶ 6, Docket No. 125.)   Therefore, the Court determines there exists a genuine issue of material fact as to whether Local 638 knew its silence gave a false impression about Central States' intentions to Gopher, and as to Local 638's intentions in failing to disclose this knowledge.

Gopher alleges that it justifiably relied on Local 638's silence regarding the planned audit and intended to remain a participant in the Fund for the anticipated duration of plaintiffs' employment.  When "a party to whom a representation has been made has not made an investigation adequate to disclose the falsity of the representation, the party whose misstatements have induced the act cannot escape liability by claiming that the other party ought not to have trusted him."  *Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 39 (Minn. 1967).

Gopher argues that if Central States' issues had been brought to Gopher's attention in 2005 by Lecy, Gopher would not have agreed to the terms of the Drivers' CBA. (Weber Dep. 123:17-124:4, Nov. 12, 2009, Watson Aff. Ex. F.)  Specifically, Gopher would have opted out of participating in the Fund.  (*Id.*)  Gopher notes that at the time Lecy allegedly withheld information the parties were engaged in collective bargaining, and the duty to bargain does not require any party to accept any particular term or condition.  *NLRB v. Wonder State Mfg. Co.*, 344 F.2d 210, 215 (8th Cir. 1965) ("[S]uch

obligation [to bargain in good faith] does not compel either party to agree to a proposal or require the making of a concession.").

Local 638 responds that Gopher would not have had a right to opt out of Central States' Fund, and would have had to discuss doing so with Local 638. Therefore, Gopher could not have relied on representations from Local 638 to remain in Central States because it was **contractually obligated** to remain in the Fund because of the CBA.

Therefore, the Court determines there are genuine issues of material fact as to whether Gopher justifiably relied on Local 638's alleged misrepresentation, particularly as it relates to Gopher's true interest in remaining in the Fund.

Minnesota follows the minority rule that the measure of damages in a case involving fraudulent representation inducing a contract is out-of pocket-loss. *Yost*, 373 N.W.2d at 830.[5] The measure is the difference between what the defrauded person paid and what they received. *Id.*

Gopher asserts that it suffered damages in two categories: (1) increased withdrawal liability from withdrawing from the Fund in 2005; and (2) attorneys' fees and costs incurred in relation to the audit and this action. Gopher alleges that it incurred withdrawal liability to Central States totaling $1,285,000. (Nicholson Report at 5, Amundsen Aff. Ex. 8, Docket No. 132.) Gopher also alleges it has incurred approximately $600,000 in attorneys' fees and costs in the dispute over the audit, the

---

[5] "[T]he majority 'benefit of the bargain rule' allows one to recover what one would have received had the representations relied upon been true. The majority rule allows recovery of anticipated profits." *Yost*, 373 N.W.2d at 831.

Illinois action, and the present litigation.  (Amundsen Aff. ¶ 2.)  Local 638 does not dispute these calculations.

Thus, overall there are genuine issues of material fact as to Gopher's fraud claim against Local 638, and the Court denies Gopher's motion for summary judgment.

## ORDER

Based upon all the files, records and proceedings herein **IT IS HEREBY ORDERED** that:

1.      Gopher News Company's Motion for Summary Judgment on Plaintiffs' Count Three [Docket No. 135] is **GRANTED**.  Count 3 is **dismissed**.

2.      Local 638's Motion for Summary Judgment [Docket No. 107] is **GRANTED in part** and **DENIED in part** as follows:

      a.      The motion is **GRANTED** as to Plaintiffs' Count 2.  Count 2 is **dismissed**.

      b.      The motion is **DENIED** in all other respects.

3.      Central States' Motion for Summary Judgment [Docket No. 121] on Count 1 of the Amended Complaint is **GRANTED**.  Count 1 is **dismissed**.

4.      Gopher News Company's Motion for Summary Judgment on Count III of Gopher News' Cross-Claims Against Local 638 [Docket No. 129] is **DENIED**.


DATED:  March 31, 2011
at Minneapolis, Minnesota.

_____
s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

- 22 -